IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| KULAHIN RUSLAN YURIIOVYCH,<br><br>                Petitioner,<br><br>vs.<br><br>KULAHINA ZHANNA HRYHORIVNA,<br><br>                Respondent. | CV 24–78–BU–DWM<br><br>ORDER |

On December 23, 2024, this Court granted Petitioner Ruslan Yuriiovych's request for return of minor child K.M.R., (Doc. 63), and on January 8, 2025, judgment was entered in favor of Petitioner ordering K.M.R. returned to the sovereign nation of Ukraine pursuant to the 1980 Convention on the Civil Aspects of International Child Abduction (the "Hague Convention") and the International Child Abduction Remedies Act, 22 U.S.C. §§ 9001 et. seq. (Docs. 70, 71; *see also* Docs. 63, 86). Under the Hague Convention, "[a]ny court ordering return of a child . . . shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner . . . unless the respondent establishes that such order would be clearly inappropriate." 22 U.S.C. § 9007(b)(3). Because such a showing has not been made here, fees and costs shall be awarded to Petitioner.

1

Respondent suggests that an award of fees would be clearly inappropriate in this case because: (1) Petitioner initially agreed to allow the Child to leave Ukraine; (2) Petitioner changed his return location from Odesa to Chernivtsi, the ordered location of return, only after significant litigation; (3) Respondent has consistently maintained communication with Petitioner and fostered his relationship with the Child; (4) Respondent had good reason to come to the United States, as she has no job or family in either Moldova or Chernivtsi; and (5) any fee award would diminish Respondent's ability to care for the Child going forward. (*See generally*, Doc. 69.) Ultimately, Respondent fails to show that an award of fees in this case is "clearly inappropriate." 22 U.S.C. § 9007(b)(3).

## I.     Petitioner's Conduct

Respondent first argues that her unlawful retention of the Child in the United States was justified by the fact that Petitioner permitted her and the Child to travel to Moldova and the fact that Petitioner only ever wanted the Child returned to Odesa, Ukraine, which this Court has since determined would pose a grave danger to the Child. Both arguments are belied by the record. As to Petitioner's permission for the Child to leave Ukraine, there is no dispute that Petitioner allowed Respondent and the Child to travel to the neighboring country of Moldova. However, Petitioner immediately and directly objected to the Child being taken to the United States. (*See* Doc. 59-1 at 17, 19–25.) And, contrary to Respondent's

2

characterization, he consistently demanded that the Child be returned to Ukraine, (*see* Doc. 79-1), and he filed a request for return with the Central Authority in Ukraine within six months of her removal, (*see* Doc. 79-2). Even more concerning is the fact that Respondent knew that Petitioner objected to the Child traveling to the United States yet sought approval from the Uniting for Ukraine Program as early as July 2023 without Petitioner's knowledge. (*See* Doc. 1-5.) Thus, there is no question that Respondent intended to remove the Child from the Ukraine and retain her in the United States regardless of Petitioner's position on the issue.

Respondent's second argument is that Petitioner consistently insisted that the Child be returned to Odesa, which this Court has since found poses a grave threat. This once again ignores the record evidence that shows that Petitioner was willing to compromise with Respondent as to the location of the Child, so long as the Child was close enough to visit him and appear for custody proceedings in Ukraine. (*See, e.g.*, Doc. 59-1 at 25; Doc. 59-5 at 17.) Indeed, as recognized by Respondent herself, Petitioner agreed that the Child could reside in Moldova. (*See* Doc. 49 at 30.)

Accordingly, Petitioner's conduct in this case does not make the award of fees clearly inappropriate. To the contrary, it is Respondent's conduct that puts a thumb on the scale favoring fees as discussed below.

II. **Respondent's Conduct**

3

Respondent further argues that her conduct has been reasonable and that she has permitted consistent communication between Petitioner and the Child and that she had a good reason to take the Child to the United States. Once again, these arguments are not supported by the record or the law. As to the first, Respondent threatened to cut off the Child's communication with her paternal grandmother if Petitioner did not drop this case. (*See* Doc. 59-5 at 9; Doc. 59-8 at 1–2, 7 (texting Petitioner's mother: "If you stop all this, then you'll get to communicate.").) That is the opposite of maintaining open communication.

Respondent's other argument—i.e., that it was reasonable for her to come to the United States because her family is here—actually undermines her position under the Hague Convention. The record makes clear that while the war was a consideration for all parties in determining where the Child should reside, Respondent was motivated primarily by her family's presence in the United States, not the status of Ukraine. (Doc. 49 at 29–30 (stating that she came to the United States "[b]ecause [she] knew [her] family would support [her] on all matters, that [she] w[ould] have a place to live").) Respondent's decision to remove the Child as she did was not, contrary to her position, primarily based on a ground that is justified under the Convention.

The only argument Respondent makes as to conduct that weighs in her favor is the fact that she neither sought formal custody in the United States nor sought to

4

unduly delay the present proceedings. At best, this reasonable behavior mitigates her unlawful conduct under the Convention. It does not, however, make a fee award "clearly inappropriate." 22 U.S.C. § 9007(b)(3).

## III. Future Care of the Child

Respondent's strongest argument is that a fee award in this case would diminish her ability to care for the Child going forward. There is no real dispute that Respondent does not have employment lined up for when she returns to Ukraine and it is unclear what her future employment prospects may be. Thus, a fee award in the amount requested by Petitioner could harm the very person the Hague Convention is meant to protect, the Child. *See In re App. of Stead v. Menduno*, 77 F. Supp. 3d 1029 (D. Colo. 2014) (finding fee award clearly inappropriate where the respondent was financially insecure and fee shifting might have harmed the interests of the child). That said, there are three facts that mitigate this finding. First, Respondent's unlawful conduct and refusal to compromise were the cause of the costs incurred in this case. Her actions have consequences. Second, by Respondent's own testimony, she is trained in the dental profession and is therefore able to obtain future employment. Finally, Petitioner has indicated that he will cover the living expenses of both Respondent and the Child while they reside in Chernivtsi, pending a custody determination. Weighing these facts

5

against Respondent's financial obligations to the Child, a fee award is not "clearly inappropriate" here.

## CONCLUSION

Because Respondent has failed to show that a fee award is "clearly inappropriate" under the facts of this case, 22 U.S.C. § 9007(b)(3), fees shall be awarded to Petitioner. Accordingly, IT IS ORDERED that Respondent has fourteen (14) days from the date of this Order to challenge Petitioner's fee award request. (*See* Docs. 82, 82-1.) The failure to do so will be deemed an admission that the amount requested is reasonable.

DATED this 12th day of February, 2025.

09:59 A.M.

Donald W. Molloy, District Judge
United States District Court